# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                            No. CR 09-3078 JB

JOANNIE ALDERETTE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed December 2, 2011 (Doc. 424). The Court held a sentencing hearing on December 8, 2011. The primary issues are: (i) whether the Court should grant a downward departure on Defendant Joannie Alderette's offense level under U.S.S.G. § 5K2.0(c); and (ii) whether the Court should vary downward from Alderette's advisory guideline sentence. Because the Court concludes that a combination of circumstances taken together justify a departure under U.S.S.G. § 5K2.0(c), it will grant a departure under U.S.S.G. § 5K2.0(c) and depart downward 3 levels on Alderette's offense level. Additionally, the Court agrees with the parties that a sentence of 2 days or time served, whichever is less, along with 12 months of home confinement and electronic monitoring is an appropriate sentence.

## FACTUAL BACKGROUND

Alderette was one of the members of a criminal organization that sold methamphetamine. See Presentence Investigation Report ¶ 46, at 13, disclosed July 22, 2011 ("PSR"). She was one of the people involved in dealing methamphetamine. See PSR ¶ 46, at 13. Many of the people selling methamphetamine within the organization were selling the drug to support their own

methamphetamine addiction.  <u>See</u> PSR ¶ 47, at 14.  Alderette had a "dealer/supplier relationship" with co-Defendant Jeremiah Wright for approximately three months.  PSR ¶ 233, at 36.  She would receive approximately a quarter ounce of methamphetamine from him on a regular basis.  <u>See</u> PSR ¶ 233, at 36.  Following the seizure of her vehicle, she stopped receiving drugs from Wright.  <u>See</u> PSR ¶ 230, at 35-36.  Approximately twenty-one grams of methamphetamine are attributable to Alderette during the period of investigation for the charges underlying this case.  <u>See</u> PSR ¶ 238, at 37.

Alderette lives with her mother.  <u>See</u> PSR ¶ 263, at 46.  Alderette reported to the USPO that "she was the victim of physical and sexual abuse as a child from between the ages of five and 10 years old."  PSR ¶ 269, at 47.  She reported that her brother and step-brothers abused her.  <u>See</u> PSR ¶ 269, at 47.  Alderette has a son who is approximately a year and a half old.  <u>See</u> PSR ¶ 274, at 49.  He "was born with fluid on his kidneys" and "may need to have surgery to correct this problem."  <u>See</u> PSR ¶ 274, at 49.  Alderette used methamphetamine on three occasions following her pregnancy, but otherwise has stopped using the drug.  <u>See</u> PSR ¶¶ 274, 284, at 49, 51.  Alderette began using methamphetamine at the age of eleven.  <u>See</u> PSR ¶ 284, at 51.

On September 7, 2000, Alderette pled guilty to a charge of distribution of methamphetamine in New Mexico state court and received a sentence of three-years probation.  <u>See</u> PSR ¶ 254, at 41.  She violated her probation at least three times during her probationary period.  <u>See</u> PSR ¶ 254, at 41-42.  Her only other conviction occurred in 2010, where she was charged with the misdemeanor offense of driving on a suspended license.  <u>See</u> PSR ¶ 255, at 44.  In 2008, state prosecutors dismissed a trafficking-a-controlled-substance-by-distribution charge against Alderette.  <u>See</u> PSR ¶ 257, at 45.

## PROCEDURAL BACKGROUND

Alderette, pursuant to a Plea Agreement, filed June 7, 2011 (Doc. 315), pled guilty to Count 1 and Count 23 in the Superseding Indictment, filed April 27, 2010 (Doc. 62), charging her in Count 1 with a violation of 21 U.S.C. § 846, that being conspiracy to distribute methamphetamine, and charging her in Count 23 with a violation of 21 U.S.C. § 843(b), that being use of a telephone to facilitate a drug trafficking offense. The Plea Agreement stipulates that Alderette is responsible for twenty-one grams of methamphetamine. See Plea Agreement ¶ 10, at 5. The parties stipulate that she "was a minor participant in the criminal activity underlying this agreement" and that a 2-level reduction is appropriate under U.S.S.G. § 3B1.2 based on her minor role. Plea Agreement ¶ 10, at 5. The parties agree to a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, "so long as the Defendant continues to accept responsibility for the Defendant's criminal conduct." Plea Agreement ¶ 10, at 5. "Apart from the stipulation set forth in [the] plea agreement," the parties "reserve their rights to assert any position or agreement with respect to the sentence to be imposed." Plea Agreement ¶ 10, at 6-7.

The United States Probation Office ("USPO") disclosed a PSR for Alderette on July 22, 2011. In the PSR, the USPO calculates Alderette's total offense level to be 15. See PSR ¶ 252, at 40. The PSR calculates her base offense level to be 20 under U.S.S.G. § 2D1.1(c)(1) based on her possession of "at least 20 grams, but less than 30 grams of methamphetamine." PSR ¶ 245, at 39. The PSR includes a 2-level reduction under U.S.S.G. § 3B1.2(b) based on Alderette's minor role in the criminal activity at issue. See PSR ¶ 248, at 40. The PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Alderette's acceptance of responsibility. See PSR ¶ 252, at 40. The PSR lists her criminal history category as II, based on 3 criminal history points. See PSR ¶ 256, at 44. The PSR calculates that an offense level of 15 and a criminal history category of II results in a

guideline imprisonment range of 21 to 27 months.  See PSR ¶ 304, at 57.  The USPO concludes that

a departure under U.S.S.G. § 5K2.0(c) is warranted, based on a combination of factors when viewed

collectively, "including her history of physical and sexual abuse, substance abuse, parental

alcoholism, and her family ties and responsibilities."  PSR ¶ 328, at 62.  The USPO notes that

Alderette's son "was born with some medical issues such as fluid on his kidneys and a tendon

condition on his left thumb."  PSR ¶ 326, at 60.  The USPO states that her son's "biological father

is not involved in [the son's] life and Ms. Alderette is raising her son on her own, with the financial

support of her family."  PSR ¶ 326, at 60.  It comments that Alderette's "sister resides in Japan and

due to the environmental crisis that recently occurred over there, she is not able to care for" the son.[1]

PSR ¶ 326, at 60.  The USPO asserts that Alderette's mother "has stated that she would care for [the

son], should Ms. Alderette be sentenced to a term of imprisonment."  PSR ¶ 326, at 61.  The USPO

states that the mother would have difficulty caring for Alderette's son, because of her health

problems and because of her full-time employment as a nurse.  See PSR ¶ 326, at 61.  Regarding

Alderette's family history, the USPO "acknowledges the defendant endured a difficult and

disadvantaged childhood, and was subjected to various types of abuse at the hands of her male

siblings."  PSR ¶ 327, at 61.  Alderette reported to the USPO that she suffered physical and sexual

abuse as a child between the ages of five and ten years old, and that her sister suffered similar abuse.

See PSR ¶ 269, at 47.  Alderette also told the USPO that, later in her life, "she turned to drugs and

subsequently chose to be in relationships with abusive men."  PSR ¶ 269, at 48.  The USPO

_____

[1]In March 2011, an earthquake and tsunami hit Japan.  See Japan -- Earthquake, Tsunami
and Nuclear Crisis (2011), N.Y. Times,
http://topics.nytimes.com/top/news/international/countriesandterritories/japan/index.html  (last
updated Dec. 27, 2011).  This event also caused a nuclear meltdown at several nuclear power plants
in Japan.  See id.

comments that her father abused alcohol.  See PSR ¶ 327, at 61.  The USPO states that Alderette "is an unemployed college student" who "has a history of methamphetamine abuse dating back to the age of 11."  PSR ¶ 327, at 61.  It notes that she has been diagnosed with methamphetamine dependence.  See PSR ¶ 327, at 61.  On August 17, 2011, the USPO disclosed an Addendum to the PSR to update some information regarding Alderette's educational records and educational information.  There being no disputes about the PSR's factual findings, the Court adopts them as its own.

Alderette filed her Sentencing Memorandum on December 2, 2011.  She asks the Court "to give favorable considerations to the recommendations included in paragraph 328 of the PSR." Sentencing Memorandum at 2.  She states that she has complied with all conditions of pretrial supervision, has been attending community college, and "has obtained gainful employment." Sentencing Memorandum at 1.  She notes that her young son has some medical issues which may require long-term treatment.  See Sentencing Memorandum at 1.  She asserts that she is a single parent who receives some assistance from her mother.  See Sentencing Memorandum at 2.  She concedes that she has a history of drug use, but represents that she discontinued her drug use once she learned she was pregnant.  See Sentencing Memorandum at 2.  She contends that she has already "taken considerable measures towards her rehabilitation," such as engaging in psychological therapy and mental health treatment to help combat her drug problems.  Sentencing Memorandum at 2.  She does not dispute her involvement in the criminal organization at issue, but notes that the leader of the organization used her by paying her in drugs for the work she did for the organization.  See Sentencing Memorandum at 2-3.  She requests that the Court give her a sentence of "probation with strict conditions so as to reasonably assure success on her part."  Sentencing Memorandum at 3.

On December 7, 2011, Plaintiff United States of America filed the United States' Response

to Defendant's Sentencing Memorandum.  See Doc. 425 ("Response").  The United States asserts

that it does not intend to recommend a departure for Alderette.  See Response at 1.  It states that it

"understands the Court to be well-versed in the facts and circumstances of this case and trusts that

this Court will render a sentence which appropriately balances Defendant's culpability with

whatever personal circumstances may affect sentencing."  Response at 1.[2]

At the sentencing hearing on December 8, 2011, the Court stated that its initial impression

was that Alderette had a somewhat greater involvement in the criminal organization compared to

some of the other co-Defendants.  See Transcript of Hearing at 4:10-23 (taken December 8,

2011)(Court)("Tr.").[3]  The United States asserted that everyone in the criminal organization had a

less significant role than Wright, the leader of the organization, and his drug supplier.  See Tr. at

4:24-5:6 (Stanford).  The United States characterized the organization as a wheel, with Wright and

co-Defendant Jorge Acosta-Quezada at the center of the wheel as more central to the operation of

the organization and the other co-Defendants at more exterior parts of the wheel as less central to

the operation of the organization.  See Tr. at 4:24-5:6 (Stanford).  The United States characterized

Alderette as a person who was not a major distributor of methamphetamine.  See Tr. at 5:7-8

(Stanford).  It asserted that it believed she suffered from a severe methamphetamine addiction, and

was more of a "party girl" who sold the drug to finance her own addiction and to provide the drug

to her friends.  Tr. at 5:7-13 (Stanford).  The United States noted that she was making a profit selling

the drug.  See Tr. at 5:14-21 (Stanford).  The United States represented that its impression of

_____

[2]Because this is a multi-defendant case, the Court has reviewed the contents of the PSR at least a dozen times.  Alderette is approximately the ninth defendant the Court has sentenced in this case.

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Alderette was that she was not dealing with large amounts of methamphetamine. <u>See</u> Tr. at 5:23-6:8 (Stanford). It asserted that she did not have the opportunity to play a larger role in the organization, even if she may have wanted to do so. <u>See</u> Tr. at 6:9-19 (Court, Stanford). Alderette agreed with the United States that she played a minor role and largely sold the drug to finance her addiction. <u>See</u> Tr. at 6:23-7:9 (Albertorio, Court). The Court then accepted the stipulation as to the weight of the methamphetamine attributable to Alderette and the 2-level reduction for a minor role adjustment under U.S.S.G. § 3B1.2(b). <u>See</u> Tr. at 8:7-9 (Court). The parties also agreed to the Court reducing Alderette's offense level a third level for acceptance of responsibility. <u>See</u> Tr. at 8:10-16 (Court, Stanford, Albertorio).

Despite what it had stated in its written Response[4] to Alderette's Sentencing Memorandum, the United States asserted that it did not oppose the USPO's recommendation for a departure under U.S.S.G. § 5K2.0. <u>See</u> Tr. at 9:11-16 (Stanford). It represented that Alderette was close friends with Wright, but noted that she played a relatively minor role in the criminal organization. <u>See</u> Tr. at 10:23-11:3 (Stanford). The United States contended that Alderette is likely less culpable than the average participant in this criminal organization based on the relatively low amount of methamphetamine she sold. <u>See</u> Tr. at 11:4-11 (Stanford). Alderette requested probation that included strict conditions, including a possible period of house arrest. <u>See</u> Tr. at 13:3-8 (Albertorio). Alderette noted that she is presently both in school and working. <u>See</u> Tr. at 13:9-17 (Albertorio). The Court then departed downward 3-levels on Alderette's offense level under U.S.S.G. § 5K2.0. <u>See</u> Tr. at 17:13-18:8 (Court). Alderette recognized that she had performed poorly during a sentence of probation she had received approximately ten years ago, and contended that she was immature

_____

[4]The United States clarified that it was referring to U.S.S.G. § 5K1.1 in its Response. <u>See</u> Tr. at 9:11-16 (Stanford).

at that age and did not understand the consequences violating her probation would have on her life. See Tr. at 21:15-22:4 (Court, Alderette). The United States asserted that it would not oppose a sentence of house arrest combined with probation. See Tr. at 22:14-18 (Stanford). The United States noted that it had seen marked improvement in Alderette's condition since the time of her arrest. See Tr. at 23:2-12 (Stanford). The United States then compared in detail Alderette's culpability to that of some of the other co-Defendants in the case. See Tr. at 22:19-26:10 (Court, Stanford).

ANALYSIS

Because the Court concludes that a combination of circumstances in Alderette's case justify a departure under U.S.S.G. § 5K2.0(c), it will grant a departure under U.S.S.G. § 5K2.0(c) and depart downward 3-levels on Alderette's offense level. Additionally, the Court agrees with the parties that a sentence of 2 days or time served, whichever is less, along with 12 months of home confinement and electronic monitoring is an appropriate sentence in this case. As to Counts 1 and 23, the Court sentences Alderette to a sentence of 2 days or time served, whichever is less, along with 3 years of supervised release, which will include conditions of supervised release requiring 12 months of home confinement and electronic monitoring. These sentences will run concurrently.

**I.     THE COURT WILL GRANT A DOWNWARD DEPARTURE UNDER U.S.S.G. § 5K2.0(c) AND DEPART DOWNWARD 3 LEVELS ON ALDERETTE'S OFFENSE LEVEL.**

U.S.S.G. § 5K2.0(c) provides:

> The court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, only if --
>
> > (1)     such offender characteristics or other circumstances, taken together, make the case an exceptional one; and

(2)      each such offender characteristic or other circumstance is --

        (A)      present to a substantial degree; and

        (B)      identified in the guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted.

U.S.S.G. § 5K2.0(c).  In most cases, "departures based on grounds not mentioned in the Guidelines will be highly infrequent."  Koon v. United States, 518 U.S. 81, 95-96 (1996).  Although such departures under U.S.S.G. § 5K2.0 may be infrequent, unusual circumstances may be sufficiently extraordinary that they are accepted as a basis for departure and thereby become relevant to sentencing.  See Koon v. United States, 518 U.S. at 95-96.  The United States Sentencing Commission has advised courts in applying departures:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S. Sentencing Manual ch. 1 pt. A.4(a), at 6 (2011).

The Court agrees with the USPO that a departure under the following guidelines alone is not appropriate under the facts of this case: (i) U.S.S.G. § 5H1.3[5] for mental and emotional conditions; (ii) U.S.S.G. § 5H1.4[6] for drug and alcohol dependence; (iii) U.S.S.G. § 5H1.6[7] for family ties and

---

[5]U.S.S.G. § 5H1.3 provides: "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."  U.S.S.G. § 5H1.3

[6]U.S.S.G. § 5H1.4 provides: "Drug or alcohol dependence or abuse ordinarily is not a reason for a downward departure."  U.S.S.G. § 5H1.4.  The Sentencing Commission has recognized: "Substance abuse is highly correlated to an increased propensity to commit crime.  Due to this increased risk, it is highly recommended that a defendant who is incarcerated also be sentenced to

responsibilities; and (iv) U.S.S.G. § 5H1.12[8] for lack of guidance as a youth.  Alderette has some mental problems, likely in part because of the abuse she faced as a child and throughout her life as well as issues arising out of her drug problems.  It is undisputed that she has faced a methamphetamine problem for a significant period of time.  The Court is conscious that she has remained clean from methamphetamine for approximately two years now.  It also appears that her child may face significant health problems throughout its life, although Alderette's mother may have some ability to care for the child if the Court incarcerates Alderette.  Alderette's circumstances when she was young are troubling, particularly the sexual abuse she faced when she was very young.  Taken individually, however, none of these circumstances are significantly different from those of a large portion of defendants who appear before the Court.  A departure on any one of those guidelines alone would not be appropriate, because of the lack of extraordinary circumstances present in this case to distinguish it from other similar cases.  Additionally, even if a departure were warranted under one of those guidelines, the Court would exercise its discretion not to depart, because Alderette's case does not fall outside the heartland of cases regarding each of those considerations individually.

    The Sentencing Commission has recognized, however, that there may be cases where several different bases for departure taken into account holistically may justify a departure even when each

_____

supervised release with a requirement that the defendant participate in an appropriate substance abuse program . . . ."  U.S.S.G. § 5H1.4.

    [7]U.S.S.G. § 5H1.6 provides that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."  U.S.S.G. § 5H1.6.

    [8]U.S.S.G. § 5H1.12 provides: "Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant in determining whether a departure is warranted."  U.S.S.G. § 5H1.12.

of them alone would not warrant a departure.  See U.S.S.G. § 5K2.0(c).  The Court believes that this

case is one of those cases.  U.S.S.G. § 5K2.0(c) provides:

> The court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, only if --
>
> (1)   such offender characteristics or other circumstances, taken together, make the case an exceptional one; and
>
> (2)   each such offender characteristic or other circumstance is --
>
> (A)   present to a substantial degree; and
>
> (B)   identified in the guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted.

U.S.S.G. § 5K2.0(c).  Here, there are four offender characteristics at issue that the USPO has

identified: (i) U.S.S.G. § 5H1.3 for mental and emotional conditions; (ii) U.S.S.G. § 5H1.4 for drug

and alcohol dependence; (iii) U.S.S.G. § 5H1.6 for family ties and responsibilities; and (iv) U.S.S.G.

§ 5H1.12 for lack of guidance as a youth.  The least significant of those characteristics in this case

is likely those taken into account under U.S.S.G. § 5H1.3 for mental and emotional conditions.

While Alderette has some mental problems, they are less compelling than some of her other

problems.  She has reported only that she has faced serious depression in her past and that she has

at times had trouble controlling violent behavior.  See PSR ¶ 282, at 51.  The Court is aware that she

has likely not yet received appropriate treatment for her mental health issues.  Within the context

of U.S.S.G. § 5H1.4, Alderette has an extensive history of drug dependence, as she has used

methamphetamine since roughly the age of eleven.  Additionally, her family ties and responsibilities

are substantial given that her child appears to face some significant health problems.  In a prior case,

the Court permitted a downward departure for family ties and responsibilities where the defendant

had a daughter and a grandchild with severe health problems, both of whom required significant attention and could not live alone.  See United States v. Martinez, No. 09-3078, 2011 WL 6828055, at *5 (D.N.M. Dec. 19, 2011)(Browning, J.)("[B]oth the daughter and the grandson have serious heart problems, and the eighteen-year old daughter requires significant care and cannot function independently without some assistance.  The daughter has recently attempted to commit suicide and suffers from fibromyalgia, which can be completely debilitating.").  Additionally, the daughter's father was a severe alcoholic who was unable to care for children, and the defendant had no family members living in or near New Mexico.  See United States v. Martinez, 2011 WL 6828055, at *5. The health problems of Alderette's child do not appear as significant as those in United States v. Martinez.  While Alderette's mother may be able to care for the child, she would likely have trouble doing so based on her health and the number of hours she works as a nurse.  Alderette also has a significant degree of troubling events in her past, particularly the physical and sexual abuse she faced at a young age.

Thus, there are at least three offender characteristics that are "present to a substantial degree" in this case.  U.S.S.G. § 5K2.0(c)(2)(A).  Likewise, each of those characteristics is a permissible ground for departure under the guidelines as required by U.S.S.G. § 5K2.0(c)(2)(B).  See U.S.S.G. § 5K2.0(c)(2)(B).  With these characteristics taken together, the Court believes that a departure is warranted.  See U.S.S.G. § 5K2.0(c)(1).  Alderette is relatively close to the threshold for the Court to be comfortable permitting a departure for family ties and responsibilities, or for her problems she faced in her youth.  Factoring the strength of her circumstances under those two guidelines along with her significant drug problem, on which the Court is always hesitant to rely independently as a basis for departure, the Court believes that some departure is warranted here under U.S.S.G. § 5K2.0(c).  The Court concludes that a downward departure of 3 levels on Alderette's offense level

best reflects the mitigating factors in her case. A 3-level downward departure results in an offense level of 12. An offense level of 12 and a criminal history category of II yields a guideline imprisonment range of 12 to 18 months.

## II. THE COURT WILL VARY DOWNWARD ON ALDERETTE'S ADVISORY GUIDELINE SENTENCE TO A SENTENCE OF 2 DAYS OR TIME SERVED, WHICHEVER IS LESS.

The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant. The Court believes that the punishment that the guidelines set forth is not appropriate for Alderette's offenses. The Court agrees with the parties that, as to both Counts 1 and 23, a sentence of 2 days or time served, whichever is less, along with 3 years of supervised release, which will include conditions of supervised release requiring 12 months of home confinement and electronic monitoring, is sufficient to reflect the seriousness of these offenses. These sentences will run concurrently. The Court believes, under the facts of this case, home confinement and electronic monitoring are more appropriate methods to achieve the goals set forth in 18 U.S.C. § 3553(a) as opposed to additional incarceration. While the Court does not believe another year of incarceration would properly reflect the factors in 18 U.S.C. § 3553(a), the Court believes a similar period of confinement and electronic monitoring is an appropriate alternative, which approximates the bottom of the guideline range as much as possible without further incarceration. Other conditions that the Court will require as part of supervised release will also provide Alderette with some needed education, training, and care to prevent some of her problems, such as her methamphetamine abuse, from reoccurring. The Court believes that, based in part on her progress in staying clean of methamphetamine for approximately two years before sentencing, it does not need to impose additional incarceration on Alderette. While the Court is generally

reluctant to rely too heavily on post-arrest rehabilitation at sentencing, because most defendants behave while on release before sentencing, Alderette's rehabilitation has been particularly impressive. That consideration is more weighty when one considers that she has abstained from using one of the most addictive drugs -- methamphetamine -- for approximately two years. When she learned that she was pregnant, she quit the drug. That self-control is impressive.

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals. This sentence adequately reflects the seriousness of the offenses, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a). While these offenses are not minor offenses, Alderette appears to be one of the least culpable members of the criminal organization. It appears she was dealing methamphetamine primarily to fuel her own addiction and to provide her friends with methamphetamine. Given the minor role she played, the Court believes this sentence promotes respect for the law. Taking into account some of the mitigating circumstances present in Alderette's case, the Court believes the sentence provides just punishment. Additional incarceration will not benefit Alderette and may, in fact, harm her impressive rehabilitation to date. Given Alderette's progress in recovering from methamphetamine abuse and her lack of significant criminal history other than one methamphetamine charge she committed over ten years ago, the Court believes there is not a need to emphasize specific deterrence to Alderette by incarceration. She is now approximately thirty years old and has a lower risk of recidivism than younger defendants. Given the minor role she played in the criminal organization and the specific factual circumstances of her case, the Court believes the sentence provides adequate deterrence to the public at large. Because Alderette has no history of violent crimes and does not

-14-

appear to present any significant dangers to the public, the Court does not believe it is necessary to emphasize the factor of protecting the public in the 18 U.S.C. § 3553(a) analysis.  Comparing Alderette's sentence to some of the other sentences of her co-Defendants also demonstrates that the sentence avoids unwarranted sentencing disparities among similarly situated defendants.  The leader of the organization, Wright, received a total sentence of 120 months based on a requirement that he serve consecutive 60-month sentences.  One of the other co-Defendants who sold methamphetamine and had one of the lower amounts of methamphetamine among the co-Defendants received a sentence of only 13 months in part based on the person's substance abuse problems.  Another co-Defendant who sold methamphetamine received a sentence of 48 months.  A third co-Defendant, Duncan Selph, who sold methamphetamine received a sentence of 41 months.  One co-Defendant, Lorraine Martinez, who was more culpable than some of the other co-Defendants but who had some compelling circumstances regarding her family ties and responsibilities warranting a departure, received a sentence of 5 days.  The Court does not believe that Alderette's sentence should be greater than Martinez' sentence.  To avoid unwarranted sentencing disparities among similarly situated defendants in this case with similarly records, the Court needs to vary to a sentence of  2 days or time served.  As the United States explained at the sentencing hearing, many of these co-Defendants are significantly less responsible than some of the more central people in the organization, specifically Wright and Acosta-Quezada, and instead are like less important exterior parts of the wheel that was this criminal organization.  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)."

(citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  As to Counts 1 and 23, the Court sentences Alderette to a sentence of  2 days or time served, whichever is less, along with 3 years of supervised release, which will include conditions of supervised release requiring 12 months of home confinement and electronic monitoring.  These sentences will run concurrently.

   **IT IS ORDERED** that the requests in the Defendant's Sentencing Memorandum, filed December 2, 2011 (Doc. 424), are granted.

                                                    _____
                                                    UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
   United States Attorney
Jon K. Stanford
   Assistant United States Attorney
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Roberto Albertorio
Albuquerque, New Mexico

        *Attorney for the Defendant*

-16-